Judge Crenshaw
delivered the opinion of the Court.
A certificate upon an entry was granted, by the County Court of Muhlenburg county, to Peter Shull, in March, 1801, and a survey was made of the land upon this certificate in 1804; and the second installment of the state price being unpaid, the land was exposed to sale for this installment, and was purchased by Samuel H. Earle, who transferred one half thereof to James Hunter; and the state price being paid, a patent for the land was issued to Earle and Hunter in July, 1843, and this patent covers the land in controversy; and a title to the land appears to have been regularly derived to the plaintiff from *125 the patentees. But neither Hunter nor Earle, nor any one under them, has ever been in possession of the land; it was admitted that the defendant was in possession thereof.
The defendant claims the land in controversy under a patent to Henry Storm, granted in January, 1820, upon a Land Office warrant. Storm sold the land in 1828 to Thomas Bailey, by written contract, and Bailey, the same year, took possession, and resided on the land until 1833 or 1834, when he sold to the defendant, who took immediate possession before Bailey left, and has resided on the land ever since; and he and Bailey both claim to the entire boundary of Storm’s patent, and the defendant relies on the superiority of his title, and the statute of limitations.
The plaintiff’s is a head-right claim, and that of the defendant is a Treasury warrant claim. The entry and survey under which the plaintiff claims date back as far as 1801 and 1804, though the patent under which he claims was not issued until the year 1843. The patent of Storm, under which the defendant claims, was issued in the year 1820, and is oldest. But the 10th section of an act of 1815, for appropriating the vacant lands of this commonwealth, by Treasury warrants, enacts that all entries theretofore made, all titles founded upon surveys theretofore made, which, by the laws at the time being, were authorized to be made, shall be deemed superior to surveys made upon warrants obtained by virtue of said act of 1815, notwithstanding any alleged vagueness in the entries or certificates on which surveys were founded, and notwithstanding such surveys may not be made conformably to entry; and that no lands shall be subject to appropriation under the provisions of said act of 1815, that hath reverted to the commonwealth by escheat, or for the non-payment of the tax or taxes due thereon, or for a failure to list the same for taxation, or for any forfeiture that may have happened from a failure to pay the install *126 ment or installments due thereon prior to said act; and that no lands should be appropriated by said act to which the Indian claim was not extinguished. And it is insisted, that by virtue of this 10th section of the act of 1815, the title of the plaintiff is superi- or to that of the defendant, notwithstanding the patent under which the defendant claims is the oldest. But if it were conceded, that by virtue of this 10th section of the act of 1815, the title of the plaintiff might be regarded as superior, although his patent is the youngest, yet we apprehend that this superiority alone would not enable the plaintiff to recover in this suit, unless the patent under which the defendant claims is void, or unless, if it be valid, the defendant has failed to bring himself within the protection of the act of 1809, to compel the speedy adjustment of land claims. (2d Statute Law, 1441.)
1. The 10 th section of the act of 1815, authorizing the issue of Kentucky land warrants, does not declare a patent issued on such warrants to be void, but only declares all titles founded upon surveys theretofore made, which by the laws at the time being were authorized to be made, shall be deemed superior to surveys made on the Kentucky land warrant, obtained by virtue of said act, &c.
2. The statute i809™oftlseven years, is^a pro-holding under a warrant^ who tras been 7 years before*suit^un^ less the person bOTed'^^under some of the dis-^^68 jam8h¿ statute. (Ash-b t o o h s Quarles’ heirsj ante-'>
*126 We remember but two states of case in which the courts are authorized to pronounce a patent void. One is, where the Legislature have declared that the patent shall be void, if issued in contravention of specified provision; and the other is, where they have declared that the patent shall be deemed fraudulent, if issued under similar circumstances. The tenth section of the act of 1815, supra, does not declare a patent void or fraudulent, if issued under the circumstances therein mentioned, but only declares, in substance, that surveys upon land office warrants shall be inferior to all entries theretofore made, and all titles founded upon surveys theretofore made, &c.
The patent to Storm, theretofore-, under which the defendant claim is not void, whether it be inferior to the title of the plaintiff or not. Consequently the defendant has shown himself invested with a conne°ted title, deducible of record from the commonwealth; and has manifested by the proof, or admissions in the record, that he, and those under whom ^ie claims, have been in the continued adverse possession of the land by actual pedis possessio, not only for seven years next before the commencement of this *127 suit, but ever since the year, 1828. Under such a state of facts, the statute of 1809 declares that no action at law, bill in equity, or other process, shall be commenced, or sued out, by any person or persons, claiming under, or by an adverse interfering entry, survey, or patent, whereby to recover the title or possession from him or her who shall have so continued in possession for seven years next preceding any such suit or action. But it is provided in the fourth section of the same act, that the limitation prescribed therein shall not extend to infants, femes covert, cfec., but such persons shall be at liberty to institute such suits as are meant to be limited by the act, at any time within seven years after their respective disabilities are removed, áte.; and it remains, that we enquire whether by anything developed in this controversy, the right of the plaintiff to sue, when he did, was saved by any of the disabilities mentioned in said fourth section. No disabilities are insisted on, except those of infancy and coverture.
Earle, one of the patentees under whom the plaintiff claims, died in 1823, leaving three daughters, Leonora, Nancy, and Selina, and a son was born of his wife after his death. Leonora was born in 1814, and married Berry in 1833, and died about the year 1845, leaving ten children, all minors at the commencement of the suit. It does not appear when Nancy and Selina were born, but they were married' about the year 1842. Nancy married Oates, who died in 1854, and Selina married High, and she and her husband are still living; and the son is also still alive.
Hunter, the other joint patentee with Earle, died more than twenty years ago, leaving four children — ■ two sons and two daughters — one of the daughters married Reid, twenty-five years ago, and died in June, 1841, leaving eight children, all infants, and one is still an infant. The other daughter mai’ried about the year 1850, and she and her husband are still alive. The ages of these two different sets of *128 children cannot be ascertained with precision from anything in the record. But enough is made known to ascertain whether, .by virtue of their infancy or coverture, the right of suit was saved to the plaintiff at the time of its institution.
3. One disability cannot be added to another, as coverture to infancy, to save the right of a party against the operation of the statute of limitations of 1809. It is the duty of a party ■claiming the benefit of the saving in a statute of limitations to show facts giving that protection.
Earle, as we have stated, died in 1823, leaving three daughters, and a son was born after his death. His children appear to have been minors when the adversary possession commenced in 1828, and the savings of the statute were then operating in their favor upon the ground of infancy; and they must all have attained majority in the year 1844, and so far as the infancy of these children is relied upon as saving the right of action, the suit ought to have been brought within seven years from the latter period, which was early in the year 1851, and the suit was not commenced till July, 1853. So that by the infancy of. Earle’s children, the plaintiff did not bring himself within the savings of the statute.
The marriage of Leonora in 1833, can make no difference, as this disability of coverture cannot be added to that of her infancy, which was in operation at the time of the marriage.
Without, at present, remarking upon the division of the land between Hunter’s heirs and the plaintiff, and the effect it might possibly have, we will proceed to enquire whether, considering the land to have continued a joint estate in the heirs of Earle and the heirs of Hunter, the right of action, w’hen the suit was commenced, was saved to the plaintiff in consequence of the infancy of the children of Hunter.
It is admitted that Hunter died more than twenty years before the year 1854, leaving four children, but of what age they were at the time of his death the record does not disclose. One of them married five years before the death of her father, which renders it not improbable that his youngest child may have been of age more than seven years prior to the institution of the suit. But, if this be not so, it was the duty of the plaintiff to show it. And having *129 failed to do so, he has manifested no right of‘ action when the suit was instituted.
A portion, at least, of both- sets of children were infants when the defendants’ possession commenced, and the right of action was, in consequence thereof, saved by the fourth section of the act, for seven years after the youngest child attained full age. The statute did not run in consequence of that infancy untib the disability of the youngest child was removed by the attainmeut of full age. And this disability having been in operation, we have said nothing, in regard to the coverture of some of the children, because of the principle that one disability cannot be added to another. As one of the daughters of Hunter, however, seems to have been a feme covert at the time of his death, and at the time of the descent cast upon her, and as her right might thereby be- saved, we would remark in regard to her coverture that she died in 1841, and in order to save the right of action on the ground of her coverture, the suit should have been instituted within seven years after her death. The casting of descent upon her infant children would make no difference, as their disability could not be added to hers.
It thus appears that, unless disability can be added to disability, no state of case has been sho.wn in regard to the descendants of either Earle or Hunter, which would prevent the bar from operating; and that disability cannot be added to disability, was decided by this court in the case of South's heirs vs. Thomas' heirs, 7th Monroe, 69, and the same principle has been repeatedly held since the decision in that case. Infancy cannot be added to infancy, nor coverture to infancy.
This principle was decided to be applicable to the act of 1809, as well as to the general act of limitations in the recent case of Ashbrook's vs. Quarles' heirs, M. S. opinion, December term, 1854.
The land embraced by the patent to Hunter and Earle has been divided between the plaintiffs, who *130 derives title under Earle and Hunter’s heirs, and he has held in severalty since the 24th day of March, 1853. This was only a few months before-he commenced his suit, and there is no pretense of a bar by limitation against him after acquiring title in severalty. But after giving him the benefit of any allowable disability of either the heirs of Earle or of Blunter, and the right of action at the institution of the suit was not saved.
4. The statute of 1809,pro-tects the right of all, where part of the per-sons to whom ■the title accrues are infants, until all are of full age.
5. Seven years possession with title is a protection under the act of 1809, against an equitable, as well as a legal title hol■tler.
But it is contended, that as the patent to Earle and to Hunter did not issue till the year 1843, their right of action only accrued at that time, and consequently the statute of limitations only commenced running from that period. That is true in regard to the general statute of limitations, limiting the right to recover the possession of lands to twenty years next after the title or cause of action accrued. And the express language of the second section of this general statute is, that any such suit shall be brought upon any title theretofore accrued, or which might thereafter fall or accrue within twenty years next after the title or cause of action accruéd, and not after-wards.
The second section of the act of 1809, which is the section applicable to the present controversy, contains language essentially different. Its terms are : “That no action at law, bill in equity, or other process, shall be commenced or sued out by any person or persons claiming under, or by an adverse interfering entry, survey, or patent, whereby to recover the title or possession of land from him or her, who shall hereafter settle on land, to which he or she shall, at the time of such settlement made, have a connected title in law or equity, deducible of record from the commonwealth; and where the settler shall have acquired such claim or title after the time of the settlement made, the limitation shall begin to run only from the time of acquiring such title or claim, but within seven years next after such settlement made,” &c. It is readily perceived that this section of the *131 act of 1809, denies the right of suit altogether Where there has been a settlement upon the land which has continued for seven years under a connected title deducible of record from the commonwealth, without regard to the date of the adversary claim or title, and without regard to .the time of the accrual of the cause of action, the suit can only be brought within seven years next after such settlement made, &c., or next after the removal of the disabilities mentioned; whereas, by the general statute of limitations, suit is allowed to be brought for the recovery of land, at any time within twenty years next after the title or cause of action accrued.
We think the court did right in rendering judgment for the defendant.
Wherefore, the judgment is affirmed.